UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

REPORT AND RECOMMENDATION

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

Joseph Dixon,

                    Plaintiff,

     vs.

Deutsche Bank National Trust
Co., Nationscredit Home Equity
Loan Trust, Fairbanks Capital
Corp., Balboa Life and Casualty,
and Select Portfolio Servicing, Inc.,

                    Defendants.         Civ. No. 06-2858 (PJS/RLE)

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motions of Deutsche Bank National Trust Co., Nationscredit Home Equity Loan Trust, Select Portfolio Servicing, Inc., and Fairbanks Capital Corp. (collectively, the "Deutsche Bank Defendants"), for Sanctions and for Summary Judgment; the Motions of Balboa Insurance Company ("Balboa") for

Sanctions, and for Summary Judgment; and the Motion for Extension to Time to File, by the Plaintiff Joseph Dixon ("Dixon"), his two (2) Motions for Summary Judgment, and his Motion for Order Regarding Court Documents.

A Hearing on the parties' Motions was conducted on February 12, 2008, at which time, Dixon appeared <u>pro se</u>; the Deutsche Bank Defendants appeared by Kristine M. Speigelberg, Esq.; and Balboa appeared by Robert E. Salmon, Esq.

For reasons which follow, we recommend that the Deutsche Bank Defendants' Motion for Sanctions and Motion for Summary Judgment be granted; that Balboa's Motion for Sanctions and for Summary Judgment be granted; that Dixon's Motion for Extension of Time and Motion for Order Regarding Court Documents be denied, as moot; and that the Plaintiff's Motions for Summary Judgment be denied.

## II.  Factual and Procedural Background

In June of 1994, Dixon obtained a home equity loan in the amount of $31,000.00, from EquiCredit Corporation of Minnesota ("EquiCredit"), by executing and delivering a mortgage ("the Mortgage") to EquiCredit on Dixon's home in Minneapolis, Minnesota ("the Property").  See, <u>Complaint</u>, Exhibit A-4, at ¶5.  In 2001, after several assignments, the Mortgage was assigned back to EquiCredit, and

- 2 -

was serviced by Select Portfolio Servicing, Inc. ("SPS"), which was formerly known as Fairbanks Capital Corp. ("Fairbanks").  Id.

On August 1, 2005, EquiCredit assigned its Mortgage to Deutsche Bank National Trust Co. ("Deutsche Bank"), as the Trustee for Nationscredit Home Equity Loan Trust ("Nationscredit").  Id.  From his filing, it appears that Dixon defaulted on the Mortgage, and that Deutsche Bank, as the Trustee for Nationscredit, conducted a foreclosure of the Mortgage by Advertisement, pursuant to Minnesota Statutes Section 580.04, Subdivision 7.  Id. at ¶¶35, 47; Exhibit A-4, at ¶7.  Balboa issued insurance certificates to Dixon, under the master insurance policy issued to his mortgage servicer, and, after Dixon lost the Property through foreclosure, Balboa cancelled his certification of insurance.  Id. at ¶27.  As a result of Dixon's default, the Property was sold at a foreclosure sale, which was conducted by the Hennepin County Sheriff's Office ("Sheriff's Office"), and the Property was purchased by AHR Construction, Inc. ("AHR").  Record of Sheriff's Foreclosure/Execution Sale, Complaint, Exhibit A-2. Neither the Sheriff's Office, nor AHR,[1] are named as parties in Dixon's current

---

[1]Dixon previously sued AHR in a separate action which was dismissed for lack of subject matter jurisdiction.  See, Dixon v. Rodriquez, Civ. No. 06-597 (JNE/JJG), Order, Docket No. 8.

Complaint.  The expiration date by which Dixon could redeem the Mortgage passed on July 5, 2006.  Id.

On December 7, 2007, the Deutsche Bank Defendants filed a Motion for Sanctions against Dixon, see, Docket No. 183, and also filed a Motion for Summary Judgment.  See, Docket No. 189.  On December 7, 2007, Balboa also filed a Motion for Sanctions, see, Docket No. 195, and a Motion for Summary Judgment.  See, Docket No. 203.  On January 9, 2008, Dixon filed two (2) Motions for Summary Judgment, and he also asks the Court to reopen Default proceedings against the Defendants, and to impose Sanctions.[2]  See, Docket Nos. 211 and 213.

_____

[2]On December 7, 2007, Dixon filed a Motion for Enlargement of Time to File various Motions, including a Motion for Summary Judgment.  See, Docket No. 201.  In that Motion, Dixon alleged that he had uncovered "concrete and substantial evidence" in support of his claim, and that establishes fraud by the Defendants, and he asks the Court for leave to file his Motion or Motions by January 1, 2008.  As Dixon subsequently filed two (2) Motions for Summary Judgment, see, Docket Nos. 211 and 213, we recommend that this Motion for an extension of time be denied, as moot.

Dixon also filed a Motion for Order/Judgment Regarding Returned Court Documents, see, Docket No. 224, in which he alleges that counsel for the Deutsche Bank Defendants changed her address without giving him prior notice, and he seeks sanctions as a result of this alleged negligence.  However, counsel for the Deutsche Bank Defendants, Kristine M. Spiegelberg ("Spiegelberg"), has submitted an Affidavit, see, Docket No. 221, in which she attests that Dixon was informed of her change of address by letter dated December 1, 2007, which was mailed to Dixon's

(continued...)

III.  Discussion

A.    The Deutsche Bank Defendants' and Balboa's Motions for Summary Judgment.  The Deutsche Bank Defendants have filed a Motion for Summary Judgment, see, Docket No. 189, in which they argue that there are no genuine disputes of material fact as to the legality of the foreclosure on the Mortgage, and that Dixon's remaining claims against the Deutsche Bank Defendants are barred by the doctrine of res judicata, and/or collateral estoppel.   Balboa has also moved for Summary Judgment on the basis of the doctrine of collateral estoppel, see, Docket No. 203, and additionally argues that Dixon's insurance claims fail as a matter of law.  We address each Motion below.

1.    Standard of Review.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the

---

[2](...continued)
post office box address in Minneapolis. Id. at Exhibit 1.  In addition, we note that the Deutsche Bank Defendants' Motion for Summary Judgment, which was filed on December 7, 2007, also discloses Spiegelberg's new address.  At most, it appears that Spiegelberg's letter of December 1, 2007, had not yet reached Dixon before he mailed documents to the Deutsche Bank Defendants on January 7, 2007.  As a result, we have no responsible basis upon which to impose sanctions upon the Deutsche Bank Defendants, due to some alleged failure to provide Dixon with notice of their change of address, and therefore, we recommend that Dixon's Motion be denied.

evidence, and in rendering credibility determinations.  See, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003); <u>United Fire & Casualty Co. v. Garvey</u>, 328 F.3d 411, 413 (8th Cir. 2003).  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned Parenthood of Minnesota/South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 1004); <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits

or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).

Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

      2.    <u>Legal Analysis</u>.  Dixon's Complaint consists of twenty-eight (28) typewritten pages, which include a variety of allegations of wrong-doing, but which

does not contain distinct Counts or, for the most part, specific allegations against the separate Defendants.  Both the Deutsche Bank Defendants, and Balboa, argue that the majority of the claims, that are asserted by Dixon, are barred by the doctrine of res judicata, and/or collateral estoppel, and that the remaining claims should be subject to Summary Judgment on their merits.  Specifically, the Deutsche Bank Defendants ask the Court to grant Summary Judgment as to Dixon's claims that arise out of the foreclosure proceedings on the Property, and Balboa argues that Dixon has failed to state a claim, as to any alleged insurance-related violation.  We begin our analysis with the Defendants' Motions for Summary Judgment on the merits of the foreclosure and insurance claims, and then proceed to the collateral estoppel effect of prior Court proceedings, as to the remaining claims in the Complaint.

        a.   <u>The Foreclosure of Dixon's Mortgage</u>.  In his Complaint, supra at ¶¶44, 47, 48, 50, Dixon alleges that the foreclosure of the Mortgage was illegal, because it occurred without the proper notice.  The Deutsche Bank Defendants argue that we should grant Summary Judgment as to that issue for, on the Record before us, there is no genuine dispute of material fact as to the legality of that foreclosure.

The Deutsche Bank Defendants argue that the requirements of Minnesota Statutes Section 580.02 were satisfied in foreclosing on the Mortgage, which contained a power of sale clause after default.  See, Minnesota Statutes Section 580.02.  Section 580.02 provides that, following a default by the mortgager, a mortgage can be foreclosed, by advertisement, as long as no proceeding has been instituted at law to collect the debt, and the mortgage has been recorded or, if the property is on registered land, the mortgage has been registered.  The Deutsche Bank Defendants have submitted evidence that Dixon defaulted on the Mortgage, that the Mortgage was recorded, and that there has been no action to recover the debt from Dixon, see, Affidavit of Kristine M. Spiegelberg ("Spiegelberg"), Docket No. 221, at ¶6 and Exhibit D3, and, although Dixon has submitted a remarkable number of documents in support of his position, we have not found any document that would challenge the competence of the Deutsche Bank Defendants' evidence, or establish a genuine fact dispute on this issue.

Furthermore, the Deutsche Bank Defendants allege that they satisfied the Notice requirement, which is required by Minnesota Statutes Section 580.03, since the notice

of mortgage foreclosure sale was achieved by six (6) weeks of published notice.[3]  In

addition to the requirement that Notice be published, Section 580.03 provides that, "at

least four weeks before the appointed time of sale a copy of [the foreclosure] notice

shall be served in like manner as a summons in a civil action in the district court upon

the person in possession of the mortgaged premises, if the same are actually

occupied."  Dixon argues that, in violation of Section 580.03, he was not served with

a Summons and Complaint prior to the foreclosure.  See, Plaintiff's Memorandum of

Opposition, Docket No. 225, at p. 12.  However, Section 580.03 only requires service

if a property is occupied, and the Deutsche Bank Defendants have submitted evidence

that personal service of the foreclosure notice was attempted, but the Property was

found to be vacant.  See, Affidavit of Spiegelberg, supra at Exhibit D1; Plaintiff's

Motion and Exhibits, Docket No. 211, "Affidavit of Vacancy," at Exhibits 105-06;

114; 184-85; 206-07.

Finally, the Deutsche Bank Defendants note that Minnesota Statutes Section

580.19 provides as follows:

---

[3]The Deutsche Bank Defendants have also submitted evidence, that is uncontested by Dixon, that the published Notice complied with Minnesota Statutes Section 580.04, which establishes specific guidelines regarding the information to be contained in a Notice of foreclosure.  See, Affidavit of Kristine M. Spiegelberg, Docket No. 192, at Exhibit D1.

> Every sheriff's certificate of sale made under a power to sell contained in a mortgage shall be prima facie evidence that all the requirements of law in that behalf have been complied with, and prima facie evidence of title in fee thereunder in the purchaser at such sale, the purchaser's heirs or assigns, after the time for redemption therefrom has expired.

Minnesota Statutes Section 580.19.

Here, the Deutsche Bank Defendants have submitted a certificate from the Sheriff's Office, see, Affidavit of Spiegelberg, supra at Exhibit D1, that includes a Certificate of Sale, which establishes a prima facie case that the foreclosure was lawful. Dixon has not submitted any competent evidence to rebut the Certificate of Sale, which would establish that the foreclosure of the Property was unlawful.[4] Moreover, the Minnesota Supreme Court has held that State law precludes a collateral attack of a foreclosure sale. See, Prior Lake State Bank v. Mahoney, 216 N.W.2d 681, 682

---

[4] At the Hearing, Dixon stated that, in opposition to the Defendants' Motions, and in support of his own Motions for Summary Judgment, he had submitted evidence from the Federal Trade Commission ("FTC") which established that the foreclosure of his property was undertaken illegally. We have closely examined the considerable filings that Dixon has submitted, and we have found no such evidence. It is possible that Dixon is referring to a Settlement Agreement and Release, that the FTC negotiated between the members of a putative class action, and Fairbanks. See, Plaintiff's Exhibits, Docket No. 217, at Exhibit 957-1006. However, the Settlement Agreement explicitly settles "all issues and claims that have, or could have, been brought against Fairbanks or others by Plaintiffs or any Settlement Class Member," id. at Exhibit 961, and, at any rate, has no relevance to the issue currently before the Court.

- 11 -

(Minn. 1974); see also, Fidelity & Deposit Co. of Maryland v. Riopelle, 216 N.W.2d

674, 678 (Minn. 1974)("[A] certificate of sale on execution which is valid on its face

cannot be attacked in a proceeding subsequent to initial registration.").

In short, while Dixon contests the legality of the foreclosure sale, he has not

proffered any competent evidence which would create a genuine issue of material fact,

and we recommend that the Deutsche Bank Defendants' Motion for Summary

Judgment be granted as to that claim.[5]

b.    The Insurance Claims.  In his Complaint, Dixon alleges that

he never authorized Fairbanks to place insurance on the Property, nor asked Balboa

to issue such a policy, and claims that he was asked to pay excessively high insurance

premiums -- purportedly over $9,000,000.00 over a two (2) year period -- because of

his race.  See, Complaint, supra at ¶¶22-33.  In addition, Dixon alleges that Balboa

---

[5]Balboa argues that Summary Judgment as to any foreclosure-related claims, which
Dixon seeks to allege against it, is appropriate, as Dixon has not pled any facts that
would establish that Balboa was involved in that foreclosure.  In addition, Balboa has
submitted an Affidavit, which attests it was not involved in the foreclosure
proceedings.  See, Affidavit of Larry Willeford, Docket No. 207, at ¶15; Affidavit of
John F. Meadows, Docket No. 25, at ¶14.  Given these uncontroverted showings, we
agree that there is no genuine fact question, concerning Balboa's lack of involvement
in the foreclosure proceedings, and find that, to the extent that Dixon seeks to allege
claims as to Balboa, which arise out of the foreclosure of the Property, Summary
Judgment is also appropriate.

failed to pay him on a property damage claim. Id. at ¶27. Balboa argues that Dixon's insurance claims should be subject to Summary Judgment.[6]

Dixon first claims that Balboa unlawfully issued an insurance policy to Fairbanks, without obtaining his permission, as the owner of the Property. See, Complaint, supra at ¶¶24, 36. In response, Balboa has submitted a copy of the Mortgage, which was signed by Dixon on June 24, 1994, and which explicitly authorizes the lender, or servicer, to purchase insurance on the Property when the borrower fails to do so.[7] See, Affidavit of Robert E. Salmon ("Salmon"), Docket No. 206, at Exhibit A, ¶5. Pursuant to that clause, EquiCredit apparently obtained lender-placed insurance in 2001, which expired on November 8, 2001, at which time, EquiCredit arranged for Balboa to issue a Certificate of Insurance on the Property. Id. at Exhibit E, at B001-04.

---

[6]The Deutsche Bank Defendants have not moved for Summary Judgment on the merits of Dixon's insurance claims, and therefore, we address Dixon's insurance claims, as to the Deutsche Bank Defendants, subsequently, when we analyze the application of the doctrine of res judicata.

[7]The Mortgage provides that the borrower "shall keep the improvements now existing or hereafter erected on the Property insured against loss * * * in such amounts and for such periods as Lender may require," and further provides that, in the event that the borrower fails to maintain such insurance, "Lender may, in its sole discretion, obtain such insurance naming Lender as the sole beneficiary." Affidavit of Robert E. Salmon, Docket No. 206, at Exhibit A, ¶5.

The letter from EquiCredit to Dixon explained that the premium for the lender-placed insurance coverage, during the period from November 8, 2001, through November 8, 2002, would be approximately $158.00, informed Dixon that the insurance differed from a home owner's policy, as it was more expensive, had a higher deductible, and did not protect the homeowner against any loss of personal property, and requested that Dixon obtain insurance from a company of his own choice, at which time, EquiCredit would cancel the Balboa policy. Id. By letter dated November 13, 2001, EquiCredit confirmed that it had obtained insurance coverage for the Property from Balboa, and that the premium for one (1) year of coverage would be $157.00. Id. at B005-08.

Starting with a letter dated October 10, 2002, Fairbanks assumed the correspondence with Dixon, concerning his continuing obligation, under the Mortgage, to obtain insurance coverage, and advised him that, if he failed to produce proof of such insurance, the current policy would be renewed, id. at B009, and, in a letter dated November 15, 2002, confirmed that the existing insurance policy had, in fact, been renewed. Id. at B010. A similar series of letters were sent in October and November of 2003, id. at B011-13, in October and November of 2004, id. at B014-17, and in October and November of 2005. Id. at B018-21. By letter dated January 19,

- 14 -

2006, Fairbanks/SPS informed Dixon that it had cancelled the insurance policy, effective January 18, 2006, as the policy was paid off, <u>id.</u> at B022, following the foreclosure sale of the Property to AHR on January 6, 2006. See, <u>Complaint</u>, supra at Exhibit A-4, at ¶6. On this Record, we find no factual dispute concerning the ability of Balboa to issue insurance on the Property.

Next, Dixon claims that Balboa required him to pay excessively high insurance premiums, totaling a sum of $9,000,000.00 over a two (2) year period, based upon his race.[8] See, <u>Plaintiff's Exhibits to Complaint</u>, supra at Exhibit B3. In response, Balboa has submitted evidence that the annual premiums charged for the Property, over the course of its coverage, ranged from $157.00-$203.00. See, <u>Affidavit of John F. Meadows ("Meadows")</u>, <u>Docket No. 25</u>, at ¶12; <u>Affidavit of Salmon</u>, supra at Exhibit E, at B001-021. In addition, Balboa underscores that Dixon has failed to produce any evidence that would support his claim that Balboa took his race, color, or national

---

[8]Although the basis for Dixon's claim, that he was charged the sum of $9,000,000.00 for insurance coverage, is unclear, it appears that the insurance coverage, that the various lenders obtained from Balboa for the Property, was included in a master policy that was issued by Balboa to EquiCredit for lender-placed insurance coverage, and that the cancelled checks, which were produced by Balboa during discovery, on which Dixon bases his computation, reflect payments on that master policy. See, <u>Balboa's Memorandum</u>, <u>Docket No. 205</u>, at p. 5; <u>Affidavit of Robert E. Salmon</u>, <u>Docket No. 206</u>, at Exhibits B-D; <u>Plaintiff's Exhibits</u>, <u>Docket No. 3</u>, Exhibit B-3, at pp. 3, 39-89.

origin, into consideration in setting the premium that it charged Dixon for the policy. See, Affidavit of Salmon, Exhibit F, at p. 1.

Construing Dixon's argument generously, it appears that he believes that a handwritten note by a process server, which is dated November 8, 2005, and which states "Windows busted all over upper & lower unit's [sic] * * * very bad area, etc -- Dixon long gone," Affidavit of Salmon, supra at Exhibit G, at p. 2, supports his claim that the premiums, which were charged by Balboa, were racially motivated. See also, id. at Exhibit F at page 13. However, as Balboa accurately notes, only one (1) certificate of insurance was issued after the date of the process server's notation, and the premium that was charged for that annual renewal was actually lower than several of the earlier premiums. See, Affidavit of Salmon, supra at Exhibit E, at B001-21. Moreover, the noted comment has no direct connection to race, color, or national origin, and conclusory allegations are insufficient to defeat a claim for Summary Judgment. See, Wegner v. City of Ladue, 500 F.3d 710, 728 (8th Cir. 2007), citing Robinette v. Jones, 476 F.3d 585, 591 (8th Cir. 2007).

Finally, Dixon alleges that Balboa failed to pay out on a property damage claim that related to vandalism at the Property. In response, Balboa argues that it never received a claim from Dixon, or from any other person or entity, with respect to the

- 16 -

Property, see, <u>Affidavit of Larry Willeford</u>, <u>Docket No. 207</u>, ¶15; <u>Affidavit of Meadows</u>, supra at ¶11, and that no evidence, in this Record, supports Dixon's contention that a claim on the insurance policy was ever made.  See, <u>Affidavit of Salmon</u>, supra at Exhibit F, at 4-5; 10-16, 25; Exhibit H, at 18-19.  The basis for Dixon's claim, again, appears to be the note that was made on November 8, 2005, by the process server, who observed that the windows on the Property were broken.  See, <u>Affidavit of Salmon</u>, supra at Exhibit G, at p. 2.

Based upon that document, Dixon argues that the property was vandalized, and that "Balboa charged [a] premium but failed to pay to Plaintiff property damage claim." <u>Complaint</u>, supra at ¶27.  However, the Policy, which has been submitted by Balboa, provides that a claim must be made immediately after a loss, followed within sixty (60) days by a written statement detailing the nature of the loss.  See, e.g., <u>Affidavit of Salmon</u>, supra at Exhibit B, at B034.  We find no disputed facts here, as Balboa's assertion, that it never received a claim for the Property, has not been refuted by any evidence that Balboa received notice that the Property was vandalized, or that it wrongfully refused to pay out on the Policy, and therefore, Summary Judgment on that claim is appropriate.

c.    Res Judicata and Collateral Estoppel.  The Deutsche Bank Defendants, and Balboa, both argue that Dixon is barred from bringing the remaining claims in his Complaint by the doctrines of res judicata and collateral estoppel. Specifically, the Defendants contend that, in Dixon v. Fairbanks, and Dixon v. EquiCredit, supra, Dixon brought identical claims for civil and criminal conspiracy, discrimination, civil rights violations, fraud, and deceptive trade practices, and that those claims, as contained in his current Complaint, are collaterally estopped. Moreover, the Deutsche Bank Defendants maintain that the allegations in the Complaint, as to their involvement in insurance fraud, are barred by the doctrine of res judicata, as are Dixon's claims for equity skimming, and equity stripping.

i.    Standard of Review.  As the previous decisions, which the Defendants argue collaterally estop the present action, were decided by a Court in this District, pursuant to Federal law, Federal res judicata principles govern.  See, Heck v. Humphrey, 512 U.S. 477, 488 n. 9 (1994); Canady v. Allstate Ins. Co., 282 F.3d 1005, 1014 (8th Cir. 2002)("[I]t is fundamental that the res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum."), quoting Hillary v. Trans World Airlines, Inc., 123 F.3d 1041, 1043 (8th Cir. 1997); Poe v. John Deere Co., 695 F.2d 1103, 1105 (8th Cir. 1982).  "'Under

- 18 -

res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Gurley v. Hunt, 287 F.3d 728, 731 (8th Cir. 2002), quoting Allen v. McCurry, 449 U.S. 90, 94 (1980).

"The test applied to determine whether res judicata bars litigation of a claim is: (1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the judgment was a final judgment on the merits, and (3) whether the same cause of action and same parties or their privies were involved in both cases." Id., citing De Llano v. Berglund, 183 F.3d 780, 781 (8th Cir. 1999); see also, Leonard v. Southwestern Bell Corp. Disability Income Plan, 341 F.3d 696, 701 (8th Cir. 2003); Canady v. Allstate Ins. Co., supra at 1014; Black Clawson Co., Inc. v. Kroenert Corp., 245 F.3d 759, 762 (8th Cir. 2001); Lundquist v. Rice Memorial Hosp., 238 F.3d 975, 977 (8th Cir. 2001). "Final judgment on the merits precludes the relitigation of a claim on any grounds raised before or on any grounds which could have been raised in the prior action," and a plaintiff cannot assert a claim on a theory of recovery when the same claim has already been rejected by a Court based upon another theory. Poe v. John Deere Co., supra at 1105 (citing cases).

To determine if a plaintiff has stated distinct claims, we look to "whether or not proof of the same facts will support both actions, or to whether the wrong for which redress is sought is the same in both actions," and examine the claims to see whether they arise out of a common nucleus of operative facts. Id. at 1106, citing Woodbury v. Porter, 158 F.2d 194, 195 (8th Cir. 1946); United States v. Gurley, 43 F.3d 1188, 1195 (8th Cir. 1994), cert. denied, 516 U.S. 817 (1995). In addition, we look to see "'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'" United States v. Gurley, supra at 1196, quoting Lane v. Peterson, 899 F.2d 737, 741 (8th Cir. 1990).

We also apply Federal law to determine if the doctrine of collateral estoppel applies. See, Canady v. Allstate Ins. Co., supra at 1016; see also, Jaramillo v. Burkhart, 999 F.2d 1241, 1245 (8th Cir. 1993). "Collateral estoppel is appropriate when: (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action." Id., citing Wellons, Inc. v. T.E. Ibberson Co., 869 F.2d

1166, 1168 (8th Cir. 1989).   Under Federal law, there is no requirement that both parties be bound by the prior Judgment, and a party may now "'rely on collateral estoppel even though he or she is not bound by the prior judgment if the party against whom it is used had a full and fair opportunity and incentive to litigate the issue in the prior action.'" Banks v. International Union Electronic, Electrical, Technical, Salaried and Machine Workers, 390 F.3d 1049, 1054 (8th Cir. 2004), quoting Lane v. Peterson, supra at 741.

The Supreme Court has clarified that collateral estoppel can be used either offensively by a plaintiff, who is seeking to bar a defendant from litigating an issue that the defendant previously litigated against a different party, or defensively by a defendant, who seeks to prevent a plaintiff from asserting a claim that he has previously asserted, and lost, against another defendant.   See, Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 4 (1979).   The defensive use of collateral estoppel, in particular, promotes judicial economy, as it "precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" Id. at 330, citing Bernhard v. Bank of Am. Nat. Trust & Savings Ass'n,  122 P.2d 892, 895 (Calif. 1942).

    ii.  Collateral Estoppel.  In 2001, Dixon filed a Complaint in this Court, against EquiCredit and Bank of America, in which he alleged violations

of the Racketeer Influenced and Corrupt Organizations Act, the Minnesota Deceptive Trade Practices Act, and various Constitutional violations, and additionally, claimed that the defendants violated his civil rights and discriminated against him. See, <u>Dixon v. EquiCredit</u>, supra at <u>Docket No. 1</u>. There, the Court noted that, although Dixon's claims were nearly indecipherable, they arose from the Mortgage that Dixon obtained from EquiCredit on June 24, 1994, and that it was undisputed that Dixon had defaulted on that loan. See, <u>Dixon v. EquiCredit</u>, <u>Order</u>, <u>Docket No. 71</u>. By Order dated June 3, 2002, the Court granted EquiCredit and Bank of America's Motion for Summary Judgment, and that decision was subsequently affirmed by our Court of Appeals. See, <u>Dixon v. EquiCredit Corp.</u>, 82 Fed.Appx. 501 (8th Cir. 2003), cert. denied, 541 U.S. 1083 (2004), rehearing denied, 542 U.S. 958 (2004).

In April of 2003, Dixon filed a second Complaint, in this District, against Fairbanks, in which he alleged a variety of claims, including: various civil rights violations; discrimination based upon race, color, national origin, and disability; housing discrimination; violations of the Sixth, Thirteenth, and Fourteenth Amendments to the United States Constitution; criminal conspiracy; violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); extortion; fraud; and deceptive practices. See, <u>Dixon v. Fairbanks Capital Corp.</u>, supra, <u>Report and</u>

Recommendation, Docket No. 77, at pp. 2-3.  The Report of the Magistrate Judge, there, which recommended the dismissal of Dixon's claims against Fairbanks on collateral estoppel grounds, was adopted by the District Court, and our Court of Appeals later affirmed the dismissal of Dixon's claims.  See, Dixon v. Fairbanks Capital Corp., 126 Fed.Appx. 338, 338-39 (8th Cir. 2005), cert. denied, 546 U.S. 1000 (2005)("Although we agree with Dixon that the instant complaint involves different foreclosure proceedings than did the prior litigation between Dixon and [Fairbanks'] predecessor, we nevertheless conclude that summary judgment was warranted.").

The Defendants argue that the issues, which are raised by Dixon, here, are identical to those which were previously litigated in his previous lawsuits relating to the Mortgage.  As we have previously detailed, here, Dixon alleges claims of civil and criminal conspiracy, discrimination, civil rights violations, fraud, and deceptive trade practices, and each of those claims was previously raised in Dixon v. EquiCredit and Dixon v. Fairbanks.  The first prong of the test for collateral estoppel requires us to determine whether the issue, that is sought to be precluded, is identical to the issue that was previously decided.  Among the voluminous submissions that Dixon has proffered to the Court, he has included the Complaints that were filed in the two (2) previous actions.  Having examined those Complaints, and compared them to his

- 23 -

current Complaint, and having reviewed the Orders of the District Court, which granted Summary Judgment in those earlier cases, we find that Dixon is attempting to litigate the exact same claims that have already been resolved by those prior Court rulings.  See, Docket No. 211, Complaint (Dixon v. Fairbanks), at Exhibits 264-285; id., Complaint (Dixon v. EquiCredit), at Exhibits 306-25.[9]

The next prong of the test for collateral estoppel is whether the prior actions resulted in a final adjudication on the merits.  In both Dixon v. EquiCredit, and Dixon v. Fairbanks, the Court granted Summary Judgment, on the merits, in favor of the respective defendants, and dismissed all of Dixon's claims.  See, Dixon v. EquiCredit, Civ. No. 01-1091 (PAM/SRN), Order, Docket No. 71; Dixon v. Fairbanks, Civ. No. 03-2943 (DWF/FLN), Report and Recommendation, Docket No. 77; id., Order, Docket No. 81; Dixon v. Fairbanks Capital Corp., 126 Fed.Appx. 338, 339 (8th Cir. 2005), cert. denied, 546 U.S. 1000 (2005).  As "[i]t is well established that summary

---

[9]In fact, in his present Complaint, Dixon apparently acknowledges that he has previously raised those issues, as he states that the "Plaintiff, Joseph Dixon, in this instant lawsuit and others" has alleged that Fairbanks engaged in wrongdoing, and additionally attempts to raise claims against the City of Minneapolis, and the Social Security Administration, that were previously subject to summary adjudication.  See, Complaint, Docket No. 1, at ¶¶16-22; Dixon v. City of Minneapolis, Civ. No. 02-4773 (RHK/AJB), Order, Docket No. 40 (granting Summary Judgment to defendants); Dixon v. Social Security Administration, Civ. No. 05-601 (DSD/SRN), Order, Docket No. 57 (same).

judgment is a final judgment on the merits for purposes of res judicata," Dicken v. Ashcroft, 972 F.2d 213, 233 n.5 (8th Cir. 1992), we find that this second prong is satisfied.[10]  See also, Hufsmith v. Weaver, 817 F.2d 455, 461 (8th Cir. 1987)(same).

Similarly, there is no question that the privity requirement is met, as Dixon is both the Plaintiff, here, and in the two (2) prior pieces of litigations and, for collateral estoppel, only the party to be estopped need be in privity with a party to the prior action.  See, Canady v. Allstate Ins. Co., supra at 1016.  While Dixon may think it unfair that he is precluded from litigating the same issues that he previously litigated, while the Defendants might not be so precluded, the wisdom of collateral estoppel's application, under such circumstances, has been long recognized by the United States Supreme Court.  As the Court explained, in Parklane Hosiery Co., Inc. v. Shore, supra at 328, quoting Kerotest Mfg. Co. v. C-O-Two Co., 342 U.S. 180, 185 (1952):

> Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or "a lack of discipline and disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure."

---

[10]The United States Supreme Court has noted that Courts may properly use the term "res judicata" to describe both claim preclusion and issue preclusion.  See, Baker by Thomas v. General Motors Corp., 522 U.S. 222, 233 n. 5 (1998)

As apropos here, "[b]y 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines [i.e., issue and claim preclusion] protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" Taylor v. Sturgell, — U.S. ---, 128 S.Ct. 2161, 2172 (2008), quoting Montana v. United States, 440 U.S. 147, 153-54 (1979). Accordingly, the Defendants have satisfied this prong of the collateral estoppel test.

Finally, the Defendants argue that Dixon received a full and fair opportunity to be heard in his prior litigated cases, as both were decided on the merits, by Summary Judgment, following extensive pleading, discovery, and Motion practice. In addition, both cases were affirmed by our Court of Appeals. See, Dixon v. EquiCredit, supra at Docket No. 82; Dixon v. Fairbanks, supra at Docket No. 89. In sum, finding that all of the elements of collateral estoppel apply, we recommend that the Defendants' Motions for Summary Judgment be granted, as to Dixon's claims against them for civil and criminal conspiracy, discrimination, civil rights violations, fraud, and deceptive trade practices.

iii.    <u>Res Judicata</u>.  As previously noted, Dixon also alleges that the Deutsche Bank Defendants wrongfully obtained insurance coverage without his permission, and that they engaged in equity skimming and/or equity stripping.

In his Complaint, Dixon asserts that the Deutsche Bank Defendants unlawfully obtained insurance coverage on the Property without his permission.  See, <u>Complaint</u>, supra at ¶¶22-29.  In applying the test for res judicata, or claim preclusion, as with collateral estoppel, we look to determine whether there was a final Judgment on the merits, by a Court of competent jurisdiction, and whether the same cause of action, and same parties, or their privities, were involved in both cases.  See, <u>Gurley v. Hunt</u>, supra at 731.  Here, we have already detemined that the District Court's prior decisions, in <u>Dixon v. EquiCredit</u>, and <u>Dixon v. Fairbanks</u>, resulted in final Judgments, which were affirmed by our Court of Appeals.  Therefore, we turn our attention to whether Dixon's claims, here, as well as those in the previous cases, arose out of a common nucleus of operative facts, and whether the Deutsche Bank Defendants are in privity with those earlier defendants.

As to the first issue, we have no hesitation in finding that the claims, here, are supported by the same facts as those that were alleged in <u>Dixon v. EquiCredit</u>, and <u>Dixon v. Fairbanks</u>.  In a Recommendation in <u>Dixon v. Fairbanks</u>, dated September

22, 2004, see, <u>Docket No. 77</u>, at p. 3, that was adopted by the District Court, see,

<u>Docket No. 81</u>, the Magistrate Judge noted that, as is the case here, the foreclosure of

the Property had given rise to the Plaintiff's Complaints in both <u>Dixon v. EquiCredit</u>,

and <u>Dixon v. Fairbanks</u>.   Moreover, in <u>Dixon v. EquiCredit</u>, supra at Exhibit 312,

Dixon claimed that EquiCredit "conspired with [an unnamed] insurance company,"

and in <u>Dixon v. Fairbanks</u>, Dixon specifically asserted a claim of insurance

discrimination as to Fairbanks.[11]   See, <u>Complaint</u>, supra at Exhibit 272, at ¶¶29-42.

The only remaining issue is whether the parties, here, are in privity with the

parties that were involved in the prior cases.   As we noted, the District Court has

previously awarded Summary Judgment, as to Fairbanks, on Dixon's claim of

insurance redlining, and other insurance-related claims in relation to the Property, and

thus, Dixon is estopped from asserting any insurance claims as to Fairbanks.   In 2004,

Fairbanks changed its name to SPS, and, as a successor-in-interest, SPS holds the

same, successive rights as Fairbanks had, and therefore, SPS is in privity with

Fairbanks in the prior litigation.   See, <u>Answer</u>, <u>Docket No. 16</u>, at p. 1; <u>Order</u>, <u>Docket</u>

<u>No. 182</u>, at p. 2; see also, <u>Lawlor v. Nat'l Screen Service Corp.</u>, 349 U.S. 322,  329

---

[11]Moreover, the Complaint in <u>Dixon v. Fairbanks</u> was filed in April of 2003, which
is at least two (2) years after EquiCredit initially obtained lender-placed insurance on
the Property.   See, <u>Affidavit of Salmon</u>, supra at Exhibit E, at B001-04.

n. 19 (1955)(recognizing the "orthodox categories of privies" as including "'those who control an action although not parties to it * * *; those whose interests are represented by a party to the action * * *; successors in interest.'"), quoting Restatement, Judgments, Section 83, Comment a; cf., Margo-Kraft Distributors, Inc. v. Minneapolis Gas Co., 200 N.W.2d 45, 47-48 (Minn. 1972)("Those in privity would include, according to the Restatement, 'those who control an action although not parties to it * * *; those whose interests are represented by a party to the action * * *; successors in interest to those having derivative claims * * *.'"), quoting Restatement, Judgments, Section 83, Comment a; State of Minnesota v. Joseph, 636 N.W.2d 322, 327 n. 2 (Minn. 2001)(same).

Moreover, according to Dixon's own submissions to the Court, in August of 2005, SPS, as attorney-in-fact for EquiCredit, assigned its interest in the Mortgage to Deutsche Bank, as trustee for Nationscredit.  See, Complaint, Exhibit A-4, at ¶5; Affidavit of Spiegelberg, supra at Exhibit D4.  As noted, parties in privity include "successors in interest to those having derivative claims," Margo-Craft Distributors, Inc. v. Minneapolis Gas Co., supra at 47-48, quoting McMenomy v. Ryden, 184 N.W.2d 804, 807 (Minn. 1967), which, here, includes each of the Deutsche Bank Defendants.  See also, McLaughlin v. Minnesota Loan & Trust Co., 255 N.W. 839,

841 (Minn. 1934)("At law a trustee is regarded as owner of the trust property with 'all the rights and subject to all the liabilities of ownership.'"), quoting <u>Wahl v. Kellner</u>, 138 N.E. 604 (Ill. 1923).

Moreover, in the prior litigation, Fairbanks/SPS had a motive that is identical to that driving Deutsche Bank, and Nationscredit, to vigorously defend against Dixon's claims; namely, to uphold the validity of the Mortgage, including the provision in the Mortgage that allowed Fairbanks/SPS to obtain insurance on the Property, absent proof by Dixon that he had secured private insurance. Since we find that the Deutsche Bank Defendants were parties, or were in privity with parties, in the prior relevant cases, we find that Dixon's insurance-related claims are barred by the doctrine of res judicata, and therefore, the Deutsche Bank Defendants' Motion for Summary Judgment, as to those claims, should be granted.

In considering the Defendants' argument, that the equity skimming, and equity stripping claims, are barred by res judicata, see, <u>Complaint</u>, supra at ¶¶3, 22, the privity argument remains unchanged from our discussion of the insurance issues, and we need only consider the last prong of the test for res judicata, concerning the nature

of the claims that were previously litigated.[12]  Although the equity stripping, and equity skimming claims, were not included in any of Dixon's previous Complaints, that were filed by him, we find that those claims also arise out of the same facts, as those that were the subject of Dixon's prior cases that related to the Property, and therefore, they are also barred by res judicata.

Although Dixon has not clarified his claims, which allege equity skimming and equity stripping, they appear to arise out of his belief that the Deutsche Bank Defendants unlawfully foreclosed on the Property, and we have already found that Summary Judgment, in favor of the Defendants, is appropriate as that issue.  The Property was not finally auctioned, during the course of the foreclosure proceedings, until January of 2006, and Dixon filed his Complaint, in <u>Dixon v. Fairbanks</u>, in April of 2003.  However, in <u>United States v. Gurley</u>, supra at 1196, our Court of Appeals found that res judicata was appropriate, even when the previous litigation had been brought for events that took place in the 1970s, and the current litigation concerned

---

[12]Title 12 U.S.C. Section 1709-2 creates criminal liability for individuals who act with intent to defraud by equity skimming, or by purchasing one- to four-family dwellings, which are subject to a loan that is in default, and deliberately failing to make mortgage payments, while collecting rent for their own benefit. Equity stripping is a cause of action, which is based upon State law, and concerns the proper procedure to be employed by a foreclosure consultant.  See, <u>Minnesota Statutes Section 325N.04</u>.

events that took place in the 1980s.  As the Court noted, "new evidence of injury differs from a new wrong," id., quoting Supporters to Oppose Pollution, Inc. v. Heritage Group, 973 F.2d 1320, 1326 (7th Cir. 1992), and "[i]n the final analysis, the test would seem to be whether **the wrong for which redress is sought** is the same in both actions."  Id., quoting Roach v. Teamsters Local Union No. 688, 595 F.2d 446, 449 (8th Cir. 1979)[adding emphasis], quoting in turn, Woodbury v. Porter, 158 F.2d 194, 195 (8th Cir. 1964).

Dixon commenced his lawsuit against EquiCredit, as well as his subsequent lawsuit against Fairbanks, based upon his claim that the Mortgage on the Property was being fraudulently mishandled, and he sought a Judgment from the Court that the foreclosure proceedings be abandoned.  Here, Dixon seeks the same relief, arising from the same set of circumstances, with the only appreciable difference being the passage of several years, during which time, the final foreclosure sale of the Property had taken place, and the right to redemption had expired.  As the wrong for which Dixon seeks redress is the same as in the prior cases, and the rest of the elements of res judicata have been satisfied, as to Dixon's claims of equity stripping, or equity skimming, by the Deutsche Bank Defendants, we recommend that their Motion for Summary Judgment be granted, in its entirety.

B.    <u>The Motions of the Deutsche Bank Defendants, and Balboa, for Sanctions</u>.  The Deutsche Bank Defendants have filed a Motion for Sanctions against Dixon, see, <u>Docket No. 183</u>, and Balboa has filed a related Motion for Sanctions.  See, <u>Docket No. 195</u>.  Both Motions request the same relief: namely, that, pursuant to Rule 11, Federal Rules of Civil Procedure, Dixon should be barred, as a frivolous litigant, from filing any further <u>pro se</u> lawsuits in this Court, against any of the named Defendants, or their successors, regarding any facts alleged in the Complaint, here, without payment of a filing fee.

In 2001, Dixon brought suit against EquiCredit, and Bank of America, alleging a variety of Federal and State claims that arose from the Mortgage.  See, <u>Dixon v. EquiCredit Corp.</u>, supra, <u>Order</u>, <u>Docket No. 71</u>.  There, after granting the defendants' Motion for Summary Judgment, the Court imposed a sanction of $500.00 on Dixon for "frivolous and excessive" filings.  <u>Id.</u>  Dixon appealed that decision, and our Court of Appeals affirmed both the dismissal, and the appropriateness of the sanction.  See, <u>Dixon v. EquiCredit Corp.</u>, 82 Fed.Appx. 501 (8th Cir. 2003), cert. denied, 541 U.S. 1083 (2004), rehearing denied, 542 U.S. 958 (2004).

Again as noted, in that same year, Dixon commenced a lawsuit against Fairbanks, as the successor in interest to the Mortgage for which EquiCredit was the

previous servicer, asserting a number of Federal and State claims that arose from the foreclosing of the Property.  See, <u>Dixon v. Fairbanks Capital Corp.</u>, supra, <u>Report and Recommendation</u>, <u>Docket No. 77</u>; <u>Order</u>, <u>Docket No. 81</u>.  As in <u>Dixon v. EquiCredit</u>, the Court, in <u>Dixon v. Fairbanks</u>, found that Summary Judgment for the defendant was appropriate, <u>id.</u>, and our Court of Appeals affirmed that decision.  See, <u>Dixon v. Fairbanks Capital Corp.</u>, 126 Fed.Appx. 338 (8th Cir. 2005).

More recently, by Order dated October 13, 2006, the District Court, the Honorable Paul A. Magnuson presiding, granted sanctions against Dixon in the form of a permanent injunction which bars him from filing any lawsuits in this District, based upon the facts that were asserted in that case, which was brought against the City of Minneapolis, and Fairbanks, among other defendants, and arose out of the condemnation of his home.  See, <u>Dixon v. R.T. Rybak</u>, Civ. No. 06-2579 (PAM/JSM), <u>Docket No. 12</u>, at pp. 4-6.[13]

---

[13]In <u>Dixon v. Rybak</u>, Civ. No. 06-2579 (PAM/JSM), <u>Docket No. 12</u>, at pp. 6-7, the Court barred Dixon from "filing any lawsuits in this or in any other court located in the state of Minnesota, against Defendant in this action or regarding the facts in the Complaint, without payment of the filing fee and the signature of an attorney admitted to this Court or prior leave of an appointed judicial officer of the state or federal courts of Minnesota."

Moreover, the United States Supreme Court, finding that Dixon "has repeatedly (continued...)

Rule 11, Federal Rules of Civil Procedure, requires that submissions to the Court be signed by the filing party as an attestation that the filing "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and further attesting, that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."   In addition, the signing party must attest that his "factual contentions have evidentiary support," or are likely to have evidentiary support after discovery.  We apply an "objective reasonableness standard" in determining whether a party has violated Rule 11, see, Pulaski County Republican Committee v. Pulaski County Bd. of Election Commissioners, 956 F.2d 172, 173 (8th Cir. 1992), and that standard also applies to pro se litigants who file Complaints involving the same legal parties, and the same theories, as a case that was previously dismissed.  See, Carman v. Treat, 7 F.3d 1379, 1381 (8th Cir. 1993); Kurkowski v. Volcker, 819 F.2d 201, 204 (8th Cir. 1987).

---

[13](...continued)
abused this Court process," has also recently taken the unusual step of sanctioning Dixon by barring him from filing noncriminal Petitions without payment of a filing, fee and compliance with document format rules.  See, Dixon v. City of Minneapolis, 547 U.S. 1016, 1016 (2006).

The Deutsche Bank Defendants, and Balboa, are not seeking monetary sanctions, but rather, they ask the Court to limit Dixon's ability to file future actions involving the same facts, and parties, that are at issue in this matter.  Here, Dixon's Complaint was filed in June of 2006 and, since that time, he has filed over ninety (90) documents, including numerous voluminous Exhibits.  See, e.g., Docket Nos. 124-129; 211; 217.  In addition, notwithstanding that the Court ruled on his initial Motion for Default Judgment as to the Deutsche Bank Defendants, in January of 2007, see, Order, Docket No. 83, Dixon has repeatedly attempted to renew that Motion.  See, Docket Nos. 86, 213, 224.  While Dixon denies any ulterior purpose in filing those papers, he has persisted in filing Motions, and supporting documents, that have no apparent merit.

Therefore, we find that, based upon Dixon's repeated past practice of litigating the same issues against the same parties, or their successors-in-interest, as furthered by his vexatious filings in this case, the Defendants' requested sanction is entirely reasonable.  This is not a litigator who, errantly, made a misstep.  This is a litigant who refuses to accept an adverse ruling, and relitigates, vexatiously, the very same claims against any party who has any connection to the loss of his house under a foreclosure proceeding that complied with all applicable provisions of Minnesota

State law.  While we can accept Dixon's anguish in losing his home, that anguish does not justify his ceaseless effort to impose unnecessary legal burdens and expense on those whose acts have been adjudged to have been legal.  Given his past history, absent such a sanction, Dixon will merely search his voluminous papers for another entity, and commence the very same claims and, without a filing fee to discourage such a practice -- his appearances are always in forma pauperis -- he will have no reluctance to do so.[14]

Accordingly, we recommend that the Motions of Balboa, and the Deutsche Bank Defendants, for Sanctions be granted, and that Dixon be barred from any future pro se filings, as to the parties and issues contained in his Complaint in this action, without prior leave of the Court.

C.    Dixon's Motions for Summary Judgment, Motion to Reopen Default Judgment, Motion for Sanctions.  Dixon has also filed two (2) Motions for Summary Judgment, see, Docket Nos. 211, 213, as well as a Motion to Reopen Default

---

[14]We recognize that, under the in forma pauperis provisions, the Court reviews the operative Complaint to determine whether it will survive a Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure.  However, that review is a decidedly blunt instrument when, facially, highly factual claims, such as those alleged by Dixon, are alleged.  Accordingly, we conclude that a sanction more stringent, then simply requiring the review of a proposed Complaint, prior to its filing in this Court, is required.

Judgment, and a Motion for Sanctions.  See, <u>Docket No. 213</u>.  We have considered Dixon's submissions, in weighing the merits of the Defendants' Motions for Summary Judgment and, based on the foregoing analysis, we recommend that those Motions be denied, and that Summary Judgment be entered in favor of the Defendants.[15]

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Deutsche Bank Defendants' Motion for Sanctions [Docket No. 183] be granted.

2.     That the Deutsche Bank Defendants' Motion for Summary Judgment [Docket No. 189] be granted.

---

[15]Specifically, we have already denied Dixon's Motion for Default Judgment, as to various Defendants in this matter, several times.  See, <u>Docket Nos. 49, 86</u>.  From his submissions, Dixon appears to believe that the Court may award a Default Judgment, as to a defendant, when that party files a Motion for Summary Judgment which Dixon regards to be unwarranted, or submits discovery responses, with which he disagrees.  See generally, <u>Docket No. 214</u>.  However, a Default Judgment is reserved for those instances where a party "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise," <u>Rule 55(a), Federal Rules of Civil Procedure</u>, and requires a Clerk's Entry of Default before the merits of such a Judgment can be considered by the Court.  In this case, as each of the Defendants has filed an Answer, see, <u>Docket Nos. 16, 18, 80</u>, we find, once again, that Default Judgment is inappropriate.

3.      That Balboa's Motion for Sanctions [Docket No. 195] be granted.

4.      That the Plaintiff's Motion for Extension of Time to File [Docket No. 201] be denied, as moot.

5.      That Balboa's Motion for Summary Judgment [Docket No. 203] be granted.

6.      That the Plaintiff's Motion for Summary Judgment [Docket No. 211] be denied.

7.      That the Plaintiff's Motion for Summary Judgment [Docket No. 213] be denied.

8.      That the Plaintiff's Motion for Order/Judgment Regarding Returned Court Documents [Docket No. 224] be denied.


Dated:  August 1, 2008                            *s/Raymond L. Erickson*
                                                  Raymond L. Erickson
                                                  CHIEF U.S. MAGISTRATE JUDGE


**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than August 18, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by no later than **August 18, 2008**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.